**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>TELXON CORPORATION<br>SECURITIES LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 5:98-CV-2876

Judge Kathleen M. O'Malley

Magistrate Judge Patricia Hemann

## THIRD PARTY DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD-PARTY COMPLAINT

Pete C. Elliott (0002235)
Robert C. Psaropoulos (0067296)
Benesch, Friedlander, Coplan
& Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 363-4500 – telephone
(216) 363-4588 – facsimile

Of Counsel:

Steven M. Witzel
Office of General Counsel
PricewaterhouseCoopers LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 707-6792 – telephone
(646) 394-6717 – facsimile

Geoffrey F. Aronow
Nicholas I. Porritt
Arnold & Porter
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000 – telephone
(202) 942-5999 – facsimile

Counsel for PricewaterhouseCoopers LLP

Dated: June 11, 2001

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED................................................................ix

INTRODUCTION AND SUMMARY ............................................................................1

FACTUAL BACKGROUND...........................................................................................7

ARGUMENT..................................................................................................................11

I.      THE COURT SHOULD DISMISS TELXON'S CONTRIBUTION
CLAIM BECAUSE TELXON (1) BASES IT IN PART ON
ALLEGATIONS THAT AMOUNT TO AIDING AND ABETTING, FOR
WHICH THERE IS NO PRIVATE CAUSE OF ACTION, (2) FAILS TO
PLEAD FACTS SUPPORTING A STRONG INFERENCE OF FRAUD
BY PWC IN CONNECTION WITH PWC'S REPRESENTATIONS,
AND (3) FAILS TO PLEAD ITS OWN KNOWING MISCONDUCT, AN
ESSENTIAL ELEMENT OF THE CAUSE OF ACTION. ...................................1

      A.      Standard For Pleading Contribution Claim For Securities Fraud. .............12

      B.      The Burden For Pleading a "Strong Inference" of Scienter  Against
An Outsider Auditor is Heavier Than for Pleading Scienter Against
the Company that Issued the Financial Statements and Courts
Rarely Find That Burden Is Met. ..............................................................15

      C.      Telxon Improperly Bases Its Claims In Part On Allegations That
Amount To Nothing More Than Aiding And Abetting, For Which
There Is No Cause of Action for Private Parties Under The Federal
Securities Laws. .......................................................................................18

      D.      Telxon Fails To Allege Facts That Can Give Rise To A Strong
Inference Of Scienter. ..............................................................................22

              1.      Allegations of GAAS and GAAP Violations ................................23

              2.      Factual Allegations That Negate An Inference of Scienter...........28

              3.      Other Routine Allegations Against Auditors That Do Not
Sustain Telxon's Burden..............................................................30

E. Telxon Fails To Plead Its Own Knowing Violation, A Necessary Predicate To Contribution Under the Federal Securities Laws..................34

II. TELXON'S STATE LAW CLAIMS ARE BARRED BY THE OHIO STATUTE OF LIMITATIONS APPLICABLE TO SECURITIES FRAUD. .........................................................................................................34

III. THE COURT ALSO MUST DISMISS MOST OF TELXON'S STATE LAW CLAIMS BECAUSE THEY ARE NOT ADEQUATELY PLED. .............39

A. Telxon Has Failed to Plead Any Deception in Its Fraud and Fraudulent Misrepresentation Claims, Let Alone Plead Them  with Sufficient Particularity. .............................................................................40

B. Telxon's Fraudulent Concealment Claim Fails Because Telxon Pleads Only The Concealment Of An Alleged Motive For PwC's Conduct, Not Any Material Fact, and Because No Duty Of Disclosure Was Or Can Be Properly Pled....................................................43

C. Telxon Has Failed Adequately to Plead Its Breach of Fiduciary Duty and Constructive Fraud Claims Because It Has Not And Cannot Plead The Duty Necessary To Both Claims. ................................44

CONCLUSION........................................................................................................48

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>:

*Adair  v. Kaye Kotts Assoc., Inc., [1998 Transfer Binder]*, Fed. Sec. L. Rep. ¶ 90192
(CCH), No. 97 CIV 3375 (SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998)....................5

*Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980)...........................3

*Advocacy Org. for Patients and Providers  v. Auto Club Ins. Assoc.*, 176 F.3d 315
(6th Cir. 1999)..................................................................................................42, 46

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ........................................32

*Alexander Grant & Co. v. McAlister*, 669 F. Supp. 163 (S.D. Ohio 1987) ....................12

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)....................19, 20, 21

*Baker v. BP America, Inc.*, 749 F. Supp. 840 (N.D. Ohio 1990) ....................................12

*Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir. 1986) ..............4

*Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984)......................................13, 41

*Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992)..................................................17

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999)..................................................19, 21

*Bolden v. John Hancock Mutual Life Ins. Co.*, 422 F. Supp. 28 (E.D. Mich. 1976) ....................47

*Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1375 (M.D. Ga. 2000), *rev'd on
other grounds*, No. 00-13834, 2001 WL 531105 (11th Cir. May 18, 2001).....................14

*Camelio v. American Fed'n*, 137 F.3d 666 (1st Cir. 1998).......................................7, 35

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).............5, 19, 20

*Cheney v.  Cyberguard Corp.,* [2000-2001 Transfer Binder], Fed. Sec. L. Rep. ¶ 91,258
(CCH), No. 98-6879-CIV-GOLD, 2000 WL 1140306 (S.D. Fla. July 31, 2000) .............30

*In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999) ............................12, 13, 23, 25, 27

*In re Credit Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662 (E.D. Mich. 1999) ........................26

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982)..................................................5, 31

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)...................................................................16

*Duncan v. Pencer,* [1995-1996 Transfer Binder], Fed. Sec. L. Rep. ¶ 99,043
(CCH), No. 94 Civ. 0321 (LAP), 1996 WL 19043 (S.D.N.Y. Jan. 18, 1996).............17, 27

*Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 662 N.E.2d 1074 (Ohio 1996) ................................46

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).......................................................................13

*FDIC v. Schoenberger*, 781 F. Supp. 1155 (E.D. La. 1992)..........................................................46

*Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842 (Ohio Ct. App. 2000)..................44

*Firestone v. Galbreath*, 747 F. Supp. 1556 (S.D. Ohio 1990), *aff'd in part by*,
976 F.2d 279 (6th Cir. 1992)................................................................................43, 44, 45

*Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444 (5th Cir. 1985) .............36

*Fromer v. Yogel*, 50 F. Supp. 2d 227 (S.D.N.Y. 1999).................................................................14

*Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251 (S.D.N.Y. 2000) .......................13

*In re Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493 (S.D.N.Y. 1987) ...................................5

*Glickman v. Alexander & Alexander Servs., Inc.*, [1995-1996 Transfer Binder]
Fed. Sec.L. Rep. (CCH) ¶ 99,101, 93 Civ. 7594 (1996 WL 88570
(S.D.N.Y. Feb. 29, 1996) ...........................................................................................26

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, LLP*, 137
F. Supp. 2d 1114, 1120-1121 (E.D. Wis. 2001)................................................................21

*Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879 (N.D. Ohio 1998) ........................................41

*Hater v. Gradison Div. of McDonald & Co.*, 655 N.E.2d 189 (Ohio Ct. App. 1995) .............37, 38

*Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484 (Ohio Ct. App. 2000) .........................................38

*Helwig v. Vencor, Inc.*, No. 99-5153, 2001 WL 578541
(6th Cir. May 31, 2001) (en banc)...........................................................................13, 34

*IIT v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980)..................................................................................4

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680 (E.D. Pa. 2001)........................18

*In re In-Store Adver. Sec. Litig.*, 878 F. Supp. 645 (S.D.N.Y. 1995) ..........................................23

*Interim Healthcare of Northeast Ohio, Inc. v. Interim Servs., Inc.*, 12 F. Supp. 2d 703
(N.D. Ohio 1998) ..................................................................................................................43

*In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239 (S.D.N.Y. 1996) ....................................................21

*Katz v. Genninger*, Hamilton App. No. C-840219, 1985 WL 9294 (Ohio Ct. App. Jan.31,
1985) .........................................................................................................................36, 38, 39

*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417 (D.N.J. 1999) ........................32

*Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322 (7th Cir. 1989)......................................4

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999).........................................16, 26

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996) ..............................................18

*In re MTC Electronic Technologies Shareholders Litigation*, 898 F. Supp. 974 (E.D.N.Y.
1995), *vacated in part on other grounds*, 993 F. Supp. 160 (E.D.N.Y. 1997) ..................21

*McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988)............................................8

*McLean v. Alexander*, 599 F.2d 1190 (3d Cir. 1979)................................................................14, 18

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ......................................................................16, 25

*Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531 (S.D.N.Y. 1990) ..........................46

*Moore v. Fenex, Inc.*, 809 F.2d 297 (6th Cir. 1987) ......................................................................42

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286 (1993) ............................12

*O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ..............................4

*Parham v. Pepsico, Inc.*, 927 F. Supp. 177 (E.D.N.C. 1995), *aff'd*, 86 F.3d 1151 (4th Cir.
1996) .......................................................................................................................................8

*Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335 (9th Cir. 1980) ...........................................17, 31

*In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211 (D. Mass. 1999) ....................26

*Queen Uno Ltd. P'ship v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345 (D.
Colo. 1998)...........................................................................................................4, 16, 24, 32

*Reiger v. Altris Software, Inc.* [1999 Transfer Binder] ¶ 90,941 (CCH), No. 98-CV-528
    TW JFS, 1999 WL 540893 (S.D. Cal. April 30, 1999)...............................................3, 24, 26

*Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, (S.D. Cal. 2000)................*passim*

*Resolution Trust Corp. v. KPMG Peat Marwick*, 844 F. Supp. 431 (N.D. Ill. 1994)..............45, 47

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)........................................................................15, 16

*S.E.C. v. Arthur Young & Co.*, 590 F.2d 785 (9th Cir. 1979) ...........................................................3

*S.E.C. v. Goldfield Deep Mines Co. of Nev.*, 758 F.2d 459 (9th Cir. 1985) ....................................3

*S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997) ...........................................................3

*In re SCB Computer Tech., Inc. Sec. Litig.*, No. 00-2343 G/V
    (W.D. Tenn. Feb. 15, 2001) .......................................................................14, 27, 31, 32, 34

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995) ..................................................................18

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)............................................33

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) ...........*passim*

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527 (S.D. Ohio 2000) ..............5, 16

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) .......................................................33

*In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010 (N.D. Ohio 2000) .................7, 11, 12, 24, 28

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999) ...............................10, 11, 39

*The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387 (S.D.N.Y. 1988)........................................4

*Thor Power Tool Co. v. Comm'r of Internal Revenue*, 439 U.S. 522 (1979)................................18

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ...............................................................7, 35

*In re United Shoe Corp. Litig*, 718 F. Supp. 643 (S.D. Ohio 1989)...............................................41

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984)..........................................................46

*United States v. Erickson*, 601 F.2d 296 (7th Cir. 1979) .................................................................3

*In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 WL 37788
(N.D. Cal. Jan. 23, 1996)..................................................................................................21

*Vosgerichian v. Commodore Int'l*, 862 F. Supp. 1371 (E.D. Pa. 1994) ..........................................21

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ........................................................................36

*In re Wellcare Mgmt. Group, Inc. Sec. Litig.*, 964 F. Supp. 632 (N.D.N.Y. 1997) .......................30

*Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000) .....................................................................19, 20

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994)............................................15, 29

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .......................................19, 20, 21, 22

*In re Wyse Tech. Secs. Lit.*, No. C-89-1818 WHO, 1990 WL 169149
(N.D. Cal. Sept 13, 1990)...................................................................................................4

*Yadlodsky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622, 631 (E.D. Mich. 2000) ....................24

*Zucker v. Sasaki*, 963 F. Supp. 301 (S.D.N.Y. 1997)...............................................................16, 24

## Statutes and Regulations:

Private Securities Litigation Reform Act of 1995, Pub. L. No. 10467, 109 Stat. 737
(codified in various sections of 15 U.S.C. §§ 77a *et seq*. and §§ 78a *et seq*.) ............*passim*

Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b)......................................................12

Securities Exchange Act of 1934, § 21D(b)(1) 15 U.S.C. § 78u-4(b)(1).......................................13

Securities Exchange Act of 1934, § 21D (b)(2) 15 U.S.C. § 78u-4(b)(2)......................................13

Securities Exchange Act of 1934, § 21D (b)(3) 15 U.S.C. § 78u-4(b)(3)......................................13

Securities Exchange Act of 1934, § 21D (f)(2) 15 U.S.C. § 78u-4(f)(2)..................................14, 34

Securities Exchange Act of 1934, § 21D (f)(8) 15 U.S.C. § 78u-4(f)(8)..................................12, 14

28 U.S.C. § 1367(c)..........................................................................................................................7

Rule 10b-5, 17 C.F.R. § 240.10b-5.......................................................................................12, 19, 21

Ohio Rev. Code § 1707.43...................................................................................6, 36, 37, 38, 39

Ohio Rev. Code Ann. § 1707.41 ..........................................................................................37, 38

Ohio Rev. Code Ann. § 1707.42 ..............................................................................................37

**Legislative Materials:**

S. Rep. No. 104-98, at 9 (1995) ................................................................................................2

**Rules:**

Fed. R. Civ. P. 9(b)..............................................................................................12, 24, 33, 41, 42

**Miscellaneous:**

AICPA Accountant Principles Board Opinion No. 20....................................................................25

AICPA, Audit Risk Alert 1998/99 ............................................................................................32

AU § 110.03 Responsibilities and Functions of the Independent Auditor .....................................31

AU § 230.10 Due Professional Care in the Performance of Work  ................................................17

AU § 230.13 Due Professional Care in the Performance of Work  ..................................................4

AU § 312.06 Audit Risk and Materiality in Conducting an Audit ..........................................2, 25

AU § 508.08, Reports on Audited Financial Statements ............................................................17

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should dismiss Telxon Corporation's ("Telxon") claims against PricewaterhouseCoopers LLP ("PwC") for contribution under the federal securities laws as to those allegations  -- principally relating to misstatements in unaudited, quarterly financial statements -- that are not tied to any public representation by PwC, on the ground that they are nothing more than claims of aiding and abetting Telxon's primary violation of those laws, for which the United States Supreme Court has ruled that there is no private cause of action.

2.      Whether the Court should dismiss all of Telxon's claims for contribution against PwC for contribution under the federal securities laws because Telxon has failed to plead sufficient facts to establish the statutorily required strong inference that PwC, in issuing its audit report and stating that it had conducted an audit that conformed to the professional standards and that, based on that audit, it was of the view that Telxon's financial statements were properly stated, acted with scienter.

3.      Whether the Court should dismiss all of Telxon's claims against PwC for contribution under the federal securities laws because Telxon has failed to plead and thus limit its claim to the circumstances under which it is found to have acted knowingly in its own violations of the law, so that it will be jointly and severally liable for damages properly attributable to PwC, a necessary element of a contribution claim.

4.      Whether the Court, once it has decided to dismiss Telxon's only federal claims, for contribution under the federal securities laws, should also dismiss Telxon's state law claims under the doctrine set forth in *United Mine Workers v Gibbs*, 383 U.S. 715 (1966).

5.      Whether the Court should dismiss all of Telxon's state law claims because they are barred by the two-year Ohio statute of limitations, applicable to claims inextricably interwoven with claims that could be brought under the Ohio securities laws, even if the plaintiff chooses not to bring such a claim under those laws.

6.      Whether the Court should dismiss Telxon's fraud and fraudulent misrepresentation claims, which fail to state most of the elementary facts necessary to such a claim, and are vague and incoherent, because they are not stated with sufficient particularity and because they fail to state a cause of action under Ohio law by alleging facts that contradict any claim of deception.

7.      Whether the Court should dismiss Telxon's claims for fraudulent concealment, breach of fiduciary duty, and constructive fraud for failing to state a cause of action under Ohio law by failing to allege properly any concealed material fact, only a concealed alleged motive for PwC's alleged affirmative misrepresentations, and by failing to allege facts supporting a duty of disclosure.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: | ) | |
| TELXON CORPORATION | ) | Case No. 5:98-CV-2876 |
| SECURITIES LITIGATION | ) | |
| | ) | Judge Kathleen M. O'Malley |
| | ) | |
| | ) | Magistrate Judge Patricia Hemann |
| | ) | |
| | ) | |

**THIRD PARTY DEFENDANT PRICEWATERHOUSECOOPERS LLP'S**
**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Third Party Defendant PricewaterhouseCoopers LLP ("PwC") submits this memorandum in support of its motion to dismiss Telxon Corporation's Third-Party Complaint against PwC ("Complaint").

**INTRODUCTION AND SUMMARY**

Telxon Corporation ("Telxon") has filed a third-party complaint based on the legally and factually flawed premise that if Telxon's financial statements were fraudulently misleading, its auditors must be to blame.  Actually, Telxon's complaint against PwC is an odd amalgam of claims.  Telxon asserts PwC "coerced" Telxon into unnecessary restatements of its financial statements, a surefire way to draw attention and lawsuits, in order to somehow cover up its recklessness in its previous auditing of those financial statements.  At the same time, Telxon asserts that if it is found to have violated the federal securities laws because of false and misleading statements in the originally

issued financial statements, PwC must share in the responsibility for that liability.  Both case law and statute, however, prevent Telxon from shifting responsibility based on its allegations under either of its theories.

The Complaint is full of allegations regarding the accounting errors that Telxon made, and which PwC allegedly failed to prevent.  It is well established, however, that allegations of accounting errors, without more, do not set forth a fraud claim.  Accounting errors may occur, and even substantial and multiple restatements be required, for entirely innocent reasons.  *See* AU § 312.06 Audit Risk and Materiality in Conducting an Audit ("The term errors refers to *unintentional* misstatements or omissions of amounts or disclosures in financial statements.") (emphasis added).

This is particularly true in evaluating allegations against an auditor with regard to financial statements, as opposed to the company that has issued the financial statements (and its officers).  Congress had such third parties, which are one step removed from the company, specifically in mind when it enacted the Private Securities Litigation Reform Act of 1995, Pub. L. No. 10467, 109 Stat. 737 (codified in various sections of 15 U.S.C. §§ 77a *et seq*. and §§ 78a *et seq*.) ("PSLRA"), and added the requirement that a plaintiff allege facts that establish a *strong inference* of fraudulent intent, before a claim may proceed.  *See* S. Rep. No. 104-98, at 9 (1995) ("[A]ccountants [] and other professionals are prime targets of abusive securities lawsuits.  The deeper the pocket, the greater the likelihood that a marginal party will be named as a defendant in a securities class action.").

The reason for this distinction lies in the nature of the role of the auditor.  The financial statements of a company are representations of that company.  The company's

management is responsible for accurate preparation of the company's financial statements.  That responsibility does not shift or disappear if the financial statements are audited.  *S.E.C. v. Goldfield Deep Mines Co. of Nev.*, 758 F.2d 459, 467 (9th Cir.1985); *United States v. Erickson*, 601 F.2d 296, 305 (7th Cir. 1979); *S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 865 (S.D.N.Y. 1997).

An audit is an examination of the company's financial statements by an independent accountant in order for that accountant to render an opinion, in accordance with generally accepted auditing standards ("GAAS"), as to whether the financial statements fairly present, in accordance with generally accepted accounting principles ("GAAP"), the financial position and results of operations of the company.  *S.E.C. v. Arthur Young & Co.*, 590 F.2d 785, 788 n.2 (9th Cir. 1979); *Reiger v. Altris Software, Inc.*, [1999 Transfer Binder] ¶ 90,941 (CCH), 1999 WL 540893 at *6 (S.D. Cal. April 30, 1999) (*Reiger I*) (Exhibit 1 hereto).  Because the auditor cannot possibly verify independently every piece of information that underlies a company's financial statements, an audit is necessarily based upon the concept of selective testing, in which only a fraction of a company's total transactions are given detailed scrutiny.  *See*, *e.g.*, *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 432-433 (6th Cir. 1980).

If an audit reveals no material departure from GAAP in the company's financial statements, the auditor renders a so-called "clean" or unqualified opinion on the statements.  Such an opinion, however, is not, and does not purport to be, a guarantee of accuracy of the financial statements.  *See*, *e.g.*, *Arthur Young*, 590 F.2d at 788; *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1008 (S.D. Cal. 2000) (*Reiger II*); *In re Wyse Tech. Secs. Lit.*, 1990 WL 169149, at *3 (N.D. Cal. Sept. 13, 1990) (Exhibit 2

- 3 -

hereto); *see also* AU § 230.13 Due Professional Care in the Performance of Work (Exhibit 3 hereto) ("since the auditor's opinion is based on the concept of obtaining reasonable assurance, the auditor is not an insurer and his or her report does not constitute a guarantee"). Thus, the "mere fact that an auditor 'certified' an inaccurate financial statement" does not in itself support an accusation of wrongdoing against the auditor. *See In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 518-519; *Queen Uno Ltd. P'ship v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1361 (D. Colo. 1998); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 228 (S.D.N.Y. 1989); *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y. 1988).

A company's audited financial statements are sometimes incorporated in documents that contain other information in narrative form concerning the company's business -- such as the disclosures contained in a registration statement or an annual report filed with the SEC on Form 10-K. An auditor's report, however, applies only to the audited financial statements and their accompanying notes; the auditor has no responsibility to verify the accuracy of other pronouncements made by a company -- even if those pronouncements are made in conjunction with the public dissemination of the audited financial statements. *See IIT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir. 1980) (accounting firm "had no independent duty to see to the correction of portions of the prospectus other than the [audited] financial statement"). Even further from the auditor's purview are press releases and other public statements that a company will issue periodically. An accountant has no general duty to police such pronouncements. *See*, *e.g.*, *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1327 (7th Cir. 1989); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986); *Adair*

- 4 -

*v. Kaye Kotts Assoc., Inc.*, [1998 Transfer Binder] Fed. Sec. L. Rep. ¶ 90192 (CCH), 1998 WL 142353 at *5-6 (S.D.N.Y. March 27, 1998) (Exhibit 4 hereto); *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493, 505 (S.D.N.Y. 1987).

Moreover, since the United States Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), it is beyond cavil that there is no cause of action by private parties for aiding and abetting under the securities laws. Thus, unless Telxon can show that PwC actually made a statement that was fraudulently misleading, there would be no claim against PwC as a direct participant under the securities laws and thus no claim for contribution. The only time PwC "spoke" in connection with Telxon was in its opinions issued in connection with the audited financial statements at year end, not in connection with any of the quarterly financial information or at any other interim period.

The result of the application of these principles is to make the PSLRA's requirement of pleading a strong inference of scienter particularly stringent when it comes to claims against auditors, accused of failing to catch errors committed by others more intimately knowledgeable about and responsible for the underlying facts. *See In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 540 (S.D. Ohio 2000). In those circumstances, the plaintiff must identify "specific, highly suspicious facts and circumstances," apart from the alleged accounting errors, that were known to the auditor at the time of the audit and that the auditor deliberately or recklessly ignored. *SmarTalk*, 124 F. Supp. 2d 505, 515. These additional facts must create a strong inference that the auditor intended to join the fraud being committed by the company. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982).

Telxon completely fails to allege any additional specific facts, suspicious or otherwise, that were known to PwC at the time of its audits that could support an inference that any of PwC's alleged accounting errors or breaches of GAAS were motivated by the necessary scienter.  Accordingly, Telxon has failed to allege a claim for contribution under the securities laws.

Telxon also brings numerous claims against PwC under Ohio law.  As Telxon itself admits, these claims all arise from the same operative facts as the securities claims made against Telxon: Telxon's publication of allegedly misleading financial statements that were relied on by purchasers of Telxon securities.  *See* Telxon Corporation's Reply Memorandum In Further Support Of Its Motion For Leave To File And Serve Instanter A Summons And Third-Party Complaint Against Third-Party Defendant PricewaterhouseCoopers LLP at 9-14.  Accordingly, Telxon's claims are based on and inextricably interwoven with the alleged fraudulent sale of securities.  As such, they are subject to the two-year statute of limitations for securities fraud under Ohio Revised Code Section 1707.43 (West 2001).  Telxon's alleges no wrongful conduct by PwC after February 23, 1999.  Telxon's Complaint was filed May 1, 2001.  As more than two years have elapsed, Telxon's state law claims are barred by the relevant statute of limitations.

In addition, Telxon's fraud and fraudulent misrepresentation claims are not pled with sufficient particularity, and they are based on confusing and contradictory assertions that are not only fatally vague, but are in fact incoherent.  Its fraudulent concealment claim fails because no material fact is alleged to have been concealed, and no duty to disclose is properly alleged.  Finally, Telxon's fiduciary duty and constructive fraud claims fall short for lack of a fiduciary relationship.

- 6 -

The little that is then left – state law claims for breach of contract and negligence is also properly dismissed under the principles set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  *See* 28 U.S.C, § 1367(c); *Camelio v. American Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).  Therefore, the Court should dismiss the Complaint in its entirety.

### FACTUAL BACKGROUND[1]

The claims against Telxon, and Telxon's claims against PwC, arise out Telxon's decision to restate its financial statements for the fiscal years ended March 31, 1996, March 31, 1998, and March 31, 1998, as well as its interim financial statements for the first two quarters of the fiscal year ending March 31, 1999.  Telxon's decisions to restate these financial statements were announced on December 11, 1998, February 23, 1999, and June 16, 1999. *See* Complaint ¶¶ 5, 7, and 12. [2]

The first restatement, announced on December 11, 1998, related solely to Telxon's interim financial statements for the quarter ended September 30, 1998.  In December, Telxon decided, in consultation with PwC, to restate these financial statements because its initial accounting for sales it had made to a distributor called MRK was incorrect.  Complaint, ¶¶ 5, 85, 46, and 89-90.  Telxon does not, and cannot, allege that PwC made any representation regarding Texlon's initial accounting for the

---

[1] These factual allegations are taken from Telxon's Complaint and such allegations must generally be accepted as true for the purposes of a motion to dismiss.  The Court, however, need not accept as true conclusory statements or legal conclusions couched as factual allegations. *See In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1024 (N.D. Ohio 2000).

[2] Telxon announced a further restatement of its financial statements on June 29, 2000. Complaint, ¶ 13.  Telxon makes no claim against PwC arising from this restatement.

transaction, since the MRK transaction was reported to the public in interim, unaudited financial statements about which PwC made no public statement.  In fact, Telxon does not allege that PwC ever approved of its initial accounting for the MRK transaction or that PwC was even made aware of the transaction before Telxon's September 30, 1998 financial statements were released to the public.  *See* Defendants' Response Memorandum In Opposition To Plaintiffs' Motion For Class Certification at 19-21 (Telxon has possible defense based on reliance on PwC with regard to transactions unrelated to MRK but not with regard to the MRK transaction).[3]

The second restatement, announced on February 23, 1999, concerned Telxon's audited financial statements for the years ended March 31, 1996, March 31, 1997 and March 31, 1997, as well as Telxon's quarterly, unaudited financial statements for the first two quarters of fiscal 1999.  *See* Complaint ¶ 7.  For each of the fiscal year-ends, PwC audited Telxon's financial statements and provided an unqualified audit opinion.  *See* Complaint ¶ 66.  Telxon fails to set forth PwC's opinions in the Complaint, but those opinions state that –

---

[3] PwC's knowledge regarding transactions that Telxon ultimately restated is an important fact that Telxon has alleged regarding other transactions but fails to allege regarding the MRK transaction.  The failure to allege PwC's knowledge of the MRK transaction means the Court may infer that such knowledge did not exist.  *See McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 43 (6th Cir. 1988); *Parham v. Pepsico, Inc.*, 927 F. Supp. 177, 178 (E.D.N.C. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996).

1.  PwC has conducted an audit,

2.  the financial statements are the responsibility of management,

3.  PwC is responsible to state an opinion based on its audit, which involves examining evidence on a test basis to provide "reasonable assurance" that the financial statements are free of material error, and

4.  based on the conduct of such an audit under GAAS, PwC feels that it has a reasonable basis for the opinion that Telxon's financial statements fairly presented in all material respects the company's financial position in accordance with GAAP.

*See* PwC's opinion letter for Telxon's fiscal years ended March 31, 1996, 1997, and 1998, attached hereto as Exhibits 5, 6, and 7.

Telxon identifies eight transactions that were the subject of its second restatement, two of which, SofTechnics and Unimicro, it says were of primary importance (Complaint ¶¶ 32 and 63).[4]  The effect of the second restatement by Telxon was to reduce its reported revenue for the year ended March 31, 1996 by 0.3%, from $486.5 million to $484 million, and earnings for that fiscal year were reduced by 9%, from $16.5 million to $15 million.  *See* Complaint ¶ 62.  For the fiscal year ended March 31, 1997, reported revenues were reduced 1%, from $466 million to $461.3 million, and Telxon's loss for that year increased 17%, from $7.1 million to $8.3 million.  *Id.*  For its fiscal year ended March 31, 1998, Telxon's reported revenues were reduced 0.5%, from $465.9 million to $463.2 million, and its earnings were reduced 46%, from $15.2 million to $8.2 million.

---

[4] Of the other six restated transactions referred to in the Complaint, one, the Metanetics transaction, solely involved Telxon's interim, unaudited financial statements for fiscal 1999 and, therefore, PwC never audited the initial, incorrect accounting and never made any public statement that related to it.  *See* Complaint ¶ 56.  *See also* Telxon's 1999 Form 10-K (Exhibit 8 hereto).  The remaining five transactions were previously reflected in fiscal year-end financial statements audited by PwC.  *See* Complaint ¶¶ 55, 57, 58, and 60.

*Id.*  Thus, with regard to the financial statements audited by PwC, Telxon's restatements did not change any total profit to a loss, and the overall effect on Telxon's reported revenues was negligible.[5]

Finally, Telxon announced on June 16, 1999, that it had decided to restate its financial statements a third time.  *See* Complaint ¶ 12.  The third restatement relates to Telxon's interim, unaudited financial statements for the quarter ended September 30, 1998, and a transaction between Telxon and a customer called Hechingers.  *Id.*  Like the MRK transaction, there is no allegation that PwC was aware of the Hechingers transaction when Telxon's interim financial statements were released or that PwC made any representation about Telxon's initial, erroneous accounting for this transaction.  *See* Complaint ¶ 90.

The first complaints alleging securities fraud by Telxon were filed before the close of trading on December 11, 1998, following the announcement earlier that day of Telxon's first restatement of its interim, unaudited financial statements for the period ending September 30, 1998.  *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 805 (N.D. Ohio 1999).  Ultimately, twenty-seven complaints were filed against Telxon, and its former chief executive officer and chief financial officer, based on the first restatement.  *Id.*  Following the announcement of Telxon's second restatement, an additional complaint was filed.  *Id.*  No complaints were filed against PwC.  On August 29, 1999, the Court consolidated the cases against Telxon and appointed William and

---

[5] The restatements of Telxon's interim, unaudited financial statements for the fiscal year 1999 quarters were much larger and more significant.  *Id.*

Arthur Hayman as lead plaintiffs.  *Id.*  A consolidated complaint was filed on

September 30, 1999 and, on September 29, 2000, the Court denied defendants' motion to

dismiss this complaint.  *See Telxon*, 133 F. Supp. 2d at 1033.

On February 20, 2001, Telxon moved for leave to file and serve a third-party

complaint against PwC.  The Court granted the motion on April 30, 2001, and the

Complaint was filed on May 1, 2001.

## ARGUMENT

I.  **THE COURT SHOULD DISMISS TELXON'S CONTRIBUTION CLAIM
    BECAUSE TELXON (1) BASES IT IN PART ON ALLEGATIONS THAT
    AMOUNT TO AIDING AND ABETTING, FOR WHICH THERE IS NO
    PRIVATE CAUSE OF ACTION, (2) FAILS TO PLEAD FACTS
    SUPPORTING A STRONG INFERENCE OF FRAUD BY PWC IN
    CONNECTION WITH PWC'S REPRESENTATIONS, AND (3) FAILS TO
    PLEAD ITS OWN KNOWING MISCONDUCT, AN ESSENTIAL
    ELEMENT OF THE CAUSE OF ACTION.**

The core of Telxon's complaint against PwC – indeed, its only claim under

federal law – is for contribution under the federal securities laws.  To state a claim for

contribution, a party is required to allege sufficient facts to show that the party would also

be liable as a primary violator under the federal securities laws.  Here, however, Telxon

bases its claims on various allegations that amount to nothing more than a claim of aiding

and abetting, for which there is no private right of action under the federal securities

laws.  As to those allegations in which PwC can be said to have been a primary

participant, Telxon fails to allege sufficient facts to support a strong inference of scienter,

a necessary prerequisite to liability under the federal securities laws.  Finally, Telxon fails

to allege a necessary predicate to liability for contribution under the federal securities

laws as amended by the PSLRA, namely that Telxon is found to have knowingly violated

- 11 -

the federal securities laws, and therefore could be held jointly and severally liable for damages appropriately attributable to PwC.  For all these reasons,  Telxon's claim for contribution fails and the Court should dismiss it.

A.    **Standard For Pleading Contribution Claim For Securities Fraud.**

Contribution under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (West 2001) (the "Act"), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, is available only from a person who, if joined in the original suit, would have been liable for the same damages, *i.e.*, a person who has joint responsibility for the primary violation of the securities laws.  *See* § 21D(f)(8) of the Act, 15 U.S.C. § 78u-4(f)(8) (West 2001); *see also Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 298 (1993).  Accordingly, to plead adequately a claim for contribution, a third-party plaintiff must set forth sufficient allegations to demonstrate that the third-party defendant itself violated the federal securities laws jointly with the third-party plaintiff. *See Baker v. BP America, Inc.*, 749 F. Supp. 840, 844-45 (N.D. Ohio 1990); *Alexander Grant & Co. v. McAlister*, 669 F. Supp. 163, 166-67 (S.D. Ohio 1987).

To state a claim for violation of Section 10(b) of the Act and Rule 10b-5, a plaintiff must allege in connection with the purchase or sale of securities, (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) upon which the plaintiff justifiably relied, and (5) which proximately caused the plaintiff's injury.  *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999); *In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1024 (N.D. Ohio 2000).  As a fraud claim, any allegation of a securities violation must satisfy Fed. R. Civ. P. 9(b), which requires the circumstances of the alleged fraud be stated "with particularity."  To satisfy

- 12 -

this requirement, "a plaintiff must at a minimum allege the time, place, and content of the misrepresentation(s) on which he relied."  *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).  The PSLRA reinforces this requirement.  *See* § 21D(b)(1), 15 U.S.C. § 78u-4(b)(1) (for each alleged misstatement, complaint shall specify the reason or reasons why the statement is misleading).

The PSLRA goes even further, adding additional pleading requirements for securities fraud cases.[6]  Pursuant to Section 21D(b)(2) of the Act, 15 U.S.C. § 78u-4(b)(2), a complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  If a complaint fails to plead sufficient facts to give rise to a strong inference of scienter, it must be dismissed.  *See* § 21D(b)(3) of the Act, 15 U.S.C. § 78u-4(b)(3).

Scienter is "a mental state embracing intent to deceive, manipulate or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  The Sixth Circuit has held that the scienter requirement is satisfied by recklessness where recklessness means "highly unreasonable conduct which is an extreme departure from the standards of ordinary care . . . a mental state apart from negligence and akin to conscious disregard."  *Comshare*, 183 F.3d at 550.  *Accord Helwig v. Vencor, Inc.*, No. 99-5153, 2001 WL 578541 at *6 (6th Cir. May 31, 2001) (en banc) (Exhibit 9 hereto).  The court in *Comshare* emphasized that recklessness was "far from negligence" and "closer to a lesser form of intent."  183 F.3d at n.7; *see also McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979)

---

[6] The heightened pleading requirements of the PSLRA apply to contribution claims made under the Act.  *See Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251,
Footnote continued on next page

- 13 -

("negligence whether gross, grave or inexcusable cannot serve as substitute for scienter"). "[I]f the facts alleged do not exclude other plausible explanations that would undercut a plaintiff's circumstantial inference of scienter, then that plaintiff's facts cannot be fairly said to raise a 'strong inference' that the defendant acted with the required state of mind." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1375 (M.D. Ga. 2000) *rev'd on other grounds*, No. 00-13834, 2001 WL 531105, at *1 (11th Cir. May 18, 2001). *See also In re SCB Computer Tech., Inc. Sec. Litig.*, No. 00-2343 G/V, slip op. at 12 (W.D. Tenn. Feb. 15, 2001) (Exhibit 10 hereto).

The PSLRA adds a further requirement to pleading contribution claims under the Act. The PSLRA establishes a proportionate liability scheme for securities fraud, whereby individual defendants are only liable for their proportionate share of plaintiffs' damages, as determined by the jury. *See* Section 21D(f)(2) of the Act, 15 U.S.C. § 78u-4(f)(2). An individual defendant is only jointly and severally liable to the plaintiff for damages otherwise attributable to others if the jury determines that he "knowingly committed a violation of the securities laws." *Id.* For that reason, a defendant only has a contribution claim under the Act if he is jointly and severally liable to the plaintiff, Section 21D(f)(8), *i.e.*, if he has been found to have committed a knowing violation of the securities laws. Therefore, to plead properly a contribution claim under the Act, a third-party plaintiff must allege he committed a knowing violation of the securities laws. *See*, *e.g.*, *Fromer v. Yogel*, 50 F. Supp. 2d 227, 235 (S.D.N.Y. 1999) (contribution claim

---

Footnote continued from previous page
259-260 (S.D.N.Y. 2000) (applying PSLRA to contribution claim).

must be dismissed where plaintiff fails to sufficiently plead necessary joint liability with

defendant).

B.    **The Burden For Pleading a "Strong Inference" of Scienter  Against An Outsider Auditor is Heavier Than for Pleading Scienter Against the Company that Issued the Financial Statements and Courts Rarely <u>Find That Burden Is Met.</u>**

For the reasons discussed earlier, *see supra* pp. 3-6, "[t]he standard for

recklessness in securities fraud cases is more onerous when the claim is brought against

an outside auditor."  *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505,

514 (S.D. Ohio 2000).  Plaintiffs must allege specific, highly suspicious facts and

circumstances available to the auditor at the time of the audit and allege that these facts

were ignored, either deliberately or recklessly.  *Id*.  These facts must create a strong

inference that "the accounting practices were so deficient that the audit amounted to no

audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or

that the accounting judgments which were made were such that no reasonable accountant

would have made the same decisions if confronted with the same facts."  *Id*. at 514

(citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)).

Accordingly, recklessness on the part of an independent auditor entails a mental state so

culpable that "it must … approximate an actual intent to aid in the fraud being committed

by the audited company."  *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (citations

and quotations omitted).

Courts have properly held that it is extremely rare for such a mental state to exist.

*See Reiger II*, 117 F. Supp. 2d 1003, 1007-1008.  There are three principal reasons why

the courts have often found a complaint insufficient to support a strong inference of

- 15 -

scienter against the outsider auditors when they have found the allegations sufficient to allow claims to proceed against the company and its officers and directors.  *See*, *e.g*., *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527 (S.D. Ohio 2000); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999); *Queen Uno Ltd. Partnership v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345 (D. Colo. 1998).  First, unlike the company itself, an auditor will rarely, if ever, have any rational economic incentive to participate in the alleged fraud.  Second, the nature of the audit work performed by the auditor is necessarily narrow and limited.  Third, an auditor's opinion is typically the result of numerous complex judgments and assessments.  *Reiger II,* 117 F. Supp. 2d at 1007-1008.

Because an independent accounting firm's greatest asset is its reputation, most courts recognize that it is very unlikely a firm would participate in a client's fraud, conduct which, once disclosed, would severely damage that reputation.  The fees received for the audit work would not come close to the losses suffered by the accounting firm once its fraud was revealed.  *See Melder v. Morris*, 27 F.3d 1097, 1103 (5thCir. 1994); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7thCir. 1990); *SmarTalk*, 124 F. Supp. 2d at 517-18; *Zucker v. Sasaki¸* 963 F. Supp. 301, 308 (S.D.N.Y. 1997).

> I am not prepared to assume -- as Duncan would have me do -- that a Big Six (or, indeed, other) accounting firm like Coopers & Lybrand would knowingly condone a client's fraud in order to preserve a fee that, at best, is an infinitesimal percentage of its annual revenues and, by doing so, jeopardize its reputation and license, as well as subject itself to potential damages literally tens of thousands of times as large as its fee and subject the partner involved to potential professional and financial extinction. Such action by certified public accountants would be economically irrational. As such, it makes no sense, . . . and

- 16 -

> no court should leap to this conclusion absent facts from which one could infer such manifestly economically irrational behavior by these professionals.

*Duncan v. Pencer*, [1995-1996 Transfer Binder] Fed. Sec. L. Rep. ¶ 99,043 (CCH), 1996 WL 19043 at *10 (S.D.N.Y. Jan. 18, 1996) (Exhibit 11 hereto).

Secondly, it is more difficult to establish an auditor's scienter because "an accountant often depends on its client to provide the information base for the audit." *Reiger II*, 117 F. Supp. 2d at 1007-1008; *see also Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1340-1341 (9th Cir. 1980) (auditor's access to information depends upon firm's producing documents under its control).  *See also Bily v. Arthur Young & Co.*, 834 P.2d 745, 762 (Cal. 1992) ("An auditor is a watchdog, not a bloodhound.  As a matter of commercial reality, audits are performed in a client-controlled environment") (internal citations omitted).  The opinion provided by an auditor must note, as PwC's here did, that the opinion is based on its audit work, including testing on a selected basis, and the audit work provides "reasonable assurance" that the financial statements are fairly presented in accordance with GAAP.  *See* AU § 508.08, Reports on Audited Financial Statements (Exhibit 12 hereto).  GAAS also expressly provides that "absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, an audit conducted in accordance with generally accepted auditing standards may not detect a material misstatement."  *See* AU § 230.10 Due Professional Care in the Performance of Work (Exhibit 3 hereto).  It follows that an auditor can be held to have scienter with regard to its report "only if the evidence supports an inference that when it expressed the opinion it had no genuine belief that it had the information on which it

could predicate that opinion." *McLean*, 599 F.2d 1190, 1198 (3d Cir. 1979); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 703 (E.D. Pa. 2001).

Finally, an auditor's opinion is the outcome of a complex process involving significant amounts of judgment and discretion. *See Reiger II*, 117 F. Supp. 2d at 1008. This is a consequence not just of the limited nature of audit evidence, but also of the nature of GAAP itself. "Financial accounting is not a science. It addresses many questions as to which the answers are uncertain and is a process that involves continuous judgments and estimates." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995) (internal quotations and citations omitted). GAAP is not "a canonical set of rules" but consists of principles that allow for a range of reasonable treatments of particular transactions. *Thor Power Tool Co. v. Comm'r of Internal Revenue*, 439 U.S. 522, 544 (1979); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996).

For these reasons it is "exceedingly difficult for a securities plaintiff to plead facts suggesting that an independent accountant acted with the deliberate state of mind now required to withstand a motion to dismiss." *Reiger II*, 117 F. Supp. 2d at 1008. Telxon has not met that high burden here.

C.      **Telxon Improperly Bases Its Claims In Part On Allegations That Amount To Nothing More Than Aiding And Abetting, For Which There Is No Cause of Action for Private Parties Under The Federal Securities Laws.**

The Complaint contains numerous allegations regarding interim, unaudited financial statements issued by Telxon, which Telxon later decided to restate. *See*, *e.g.*, Complaint ¶¶ 30, 46-47, 56, and 85-90. To the extent Telxon purports to state a claim for contribution against PwC based on misrepresentations contained in its interim financial statements, these claims must be dismissed.

- 18 -

PwC made no representations regarding Telxon's interim financial statements. The Complaint does not – and cannot – allege that PwC issued any public statements in connection with these documents or that these unaudited documents included any reports or opinions from PwC (in contrast with the audited March 31, 1996, 1997 and 1998 financial statements, on which a PwC report was expressly issued).  The most Telxon can say about any misstatements made in those interim financial statements is that PwC "reviewed" the interim financial statements and "related data" and "participated in the preparation and dissemination" of the quarterly financial statements.  *See* Complaint ¶¶ 25 and 30.

The Supreme Court ruled in 1994 that an accountant cannot be liable in a case brought by a private party for damages for aiding or abetting a violation of Rule 10b-5 by a company.  *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).  Since *Central Bank*, three United States Courts of Appeals have uniformly ruled that primary liability may not attach to an accountant unless the accountant certifies a financial statement or issues an audit opinion.  *See Winkler v. Wigley*, 242 F.3d 369 (Table), 2000 WL 1786345 (2d Cir. Dec. 6, 2000) (Exhibit 13 hereto); *Binder v. Gillespie*, 184 F.3d 1059, 1067 (9th Cir. 1999); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998); *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996).

Two of the United States Courts of Appeals that have addressed this issue agree on the "bright line" rule that an accountant itself "must actually make a false or misleading statement," such as by issuing a certification or audit opinion, "in order to be held liable under Section 10(b)."  *Wright*, 152 F.3d at 175; *accord Anixter*, 77 F.3d at

- 19 -

1226. Both of these courts interpreted the Supreme Court's holding in *Central Bank* as requiring an accountant to make an actual misstatement in order for primary liability to attach. In so holding, both the Second and Tenth Circuits rejected "a rule allowing liability to attach to an accountant . . . who provided 'significant' or 'substantial' assistance to the representations of others." *Anixter*, 77 F.3d at 1227; *accord Wright*, 152 F.3d at 176 (declining to adopt the "substantial participation" test). As the Second Circuit stated in *Wright*:

> 'If *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'

152 F.3d at 175 (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)). Acknowledging substantial or significant assistance as a measure of primary liability would "effectively revive aiding and abetting liability under a different name, and would therefore run afoul of the Supreme Court's holding in *Central Bank*." 152 F.3d at 175; *see also Winkler*, 242 F.3d 369 (Table), 2000 WL 1786345 (2d Cir. Dec. 6, 2000) (affirming *Wright*) (Exhibit 13).

The Tenth Circuit similarly "conclude[d] that in order for accountants to 'use or employ' a 'deception' actionable under the antifraud law, they must themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors." *Anixter,* 77 F.3d at 1226. "The critical element separating primary from aiding and abetting violations is the existence of a representation . . . made by the defendant, that is relied upon by the plaintiff." *Id*. at 1225. The court drew the line

between certifications and audit opinions issued by an accountant, which were deemed to be an accountant's own representations and therefore actionable, and conduct assisting in the "representation[] made by others," which "cannot itself form the basis of liability," and therefore was not actionable.  *Id*. at 1225.[7]

A number of district courts have held likewise.  In *In re MTC Electronic Technologies Shareholders Litigation*, 898 F. Supp. 974. 987 (E.D.N.Y. 1995), *vacated in part on other grounds*, 993 F. Supp. 160 (E.D.N.Y. 1997), a district court declined to impose liability to accountants, using language almost identical to the Second Circuit's in *Wright.  See also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, LLP*, 137 F. Supp. 2d 1114, 1120-1121 (E.D. Wis. 2001); *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1256 (S.D.N.Y. 1996) (citing *MTC* with approval); *In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 WL 37788, at *11 (N.D. Cal. Jan. 23, 1996) (Exhibit 14 hereto) (finding *MTC* persuasive); *Vosgerichian v. Commodore Int'l*, 862 F. Supp. 1371, 1378 (E.D. Pa. 1994).[8]

---

[7] The third United States Court of Appeals to have addressed this issue in recent years also held that primary liability can not attach to an accountant unless the accountant engages in conduct tantamount to issuing a certification or opinion letter.  *Binder v. Gillespie*, 184 F.3d 1059, 1067 (9th Cir. 1999).

[8] There are some relatively older cases finding an accountant liable who provided "substantial assistance" to a primary violator of Rule 10b-5.  These cases, which allow liability to attach without requiring a representation to be made by an accountant, merely "reformulate the 'substantial assistance' element of aiding and abetting liability into primary liability, [and therefore] do not comport with *Central Bank*."  *Anixter*, 77 F.3d at 1226 n.10; *Wright*, 152 F.3d at 175 ("[H]olding [the accountant] primarily liable under the Act in spite of its clearly tangential role in the alleged fraud would effectively revive aiding and abetting liability under a different name, and would therefore run afoul of the Supreme Court's holding in *Central Bank*.") (internal quotations omitted).

Applying these cases, PwC cannot be found primarily liable for a Rule 10b-5 violation here on those allegations based upon interim, unaudited financial statements or other allegations not tied to the audited, year-end financial statements for which PwC issued reports. *See Wright*, 152 F.3d at, 175 (auditor cannot be primarily liable for financial statements which it did not publicly endorse or opine on). To the degree Telxon seeks contribution based on purported joint responsibility for such claims, they amount to nothing more than claims that PwC aided and abetted Telxon's primary violation, and thus the Court must dismiss those claims.

D.   **Telxon Fails To Allege Facts That Can Give Rise To A Strong Inference Of Scienter.**

Even as to those allegations based on PwC's own statements - its audit opinions - Telxon fails to plead any additional, specific, and highly suspicious facts that can give rise to a serious inference that PwC acted intentionally or recklessly in issuing those opinions. Telxon's allegations against PwC can be grouped into three categories, none of which provide the necessary foundation for a strong inference of scienter:

1. allegations in various forms of GAAP and GAAS violations, in the context of a restatement;

2. allegations which actually negate any inference of scienter on the part of PwC; and

3. a potpourri of other facts that are the commonplace kinds of allegations against auditors that courts routinely recognize as insufficient to support the necessary inference of fraud. [9]

---

[9] Telxon does assert that "PwC's reckless management of the Telxon account amounted to no audit at all." *See* Complaint ¶ 84. This is a legal conclusion, dressed as a factual allegation and asserted without any specific factual allegations in support. As such, it adds nothing towards Telxon meeting its pleading obligation and should be ignored for

Footnote continued on next page

- 22 -

Telxon makes no allegation that creates any inference, let alone a strong inference, that PwC knew of Telxon's fraud or that PwC acted despite having no genuine belief that it had a reasonable basis for its opinions.  Therefore, Telxon's complaint fails the hurdle of pleading scienter sufficiently.

### 1.     Allegations of GAAS and GAAP Violations

Telxon's primary basis for PwC's scienter appears to the allegations of various GAAP violations in Telxon financial statements audited by PwC and various alleged violations of GAAS  by PwC in conducting its audits.  *See* Complaint ¶¶ 21, 22, 39, 44, and 64-75.  As a general rule, allegations of violations of GAAP and GAAS are insufficient to create a strong inference of scienter.  *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999).  Allegations of GAAP and GAAS violations "provide no specific facts upon which the court can infer the state of mind of the accountant or its client, at any specific point in time."  *Reiger II*, 117 F. Supp. 2d at 1009-1010.  *See also In re In-Store Adver. Sec. Litig.*, 878 F. Supp. 645, 649 (S.D.N.Y. 1995) (court cannot infer even from a "serious departure" from GAAP that financial statements were prepared fraudulently as "such an inference would render meaningless the scienter requirement.").  *See generally* Section I.B, *supra*.

Although Telxon provides a long list of GAAS standards that PwC allegedly violated, the Complaint provides no details about what procedures PwC should have performed, what information these procedures would have revealed, and what impact this

---

Footnote continued from previous page
these purposes.  *See In re Telxon Corp. Sec. Litig.*, 133 F.Supp.2d 1010, 1024 (N.D. Ohio 2000); *Yadlosky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622, 631 (E.D. Mich. 2000).

- 23 -

information would have had on PwC's opinions or Telxon's financial statements.  *See Reiger I*, 1999 WL 540893 at *8 (Exhibit 1 hereto).  Perhaps to disguise the lack of substance behind its claims, Telxon substitutes a laundry list of generic standards that are either completely inapposite or completely unadorned with any of the specific factual allegations required under Rule 9(b) and the PSLRA.  These allegations merely state affirmative duties under GAAS, not particularized facts supporting a strong inference of misconduct.  *See Yadlosky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622, 631 (E.D. Mich. 2000); *Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997).

For example, Telxon alleges that PwC violated GAAS Standard of Reporting No.1, which requires audit reports to state whether financial statements are presented in accordance with GAAP.  All the PwC opinions on Telxon's financial statements contain such a statement.  *See* Exs. 5, 6, and 7.  *See also* Complaint ¶ 70 (allegation that PwC violated GAAS General Standard No. 3 which requires that PwC exercise "due professional care" when conducting an audit).  As the Court noted in *Queen Uno Ltd. Partnership v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1360-61 (D. Colo. 1998), "[these] are exactly the type of rote conclusory allegations of scienter the [PSLRA] sought to preclude."  *See also Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("boilerplate averments that accountants violated particular accounting standards" do not support inference of scienter.)

Telxon also provides another laundry list, of GAAP standards (in paragraph 21 of the Complaint), and a third laundry list, of transactions (in paragraph 22 of the Complaint).  These lists, however, do not give PwC adequate notice of the alleged GAAP violations in the financial statements, let alone the basis for drawing a strong inference

- 24 -

that PwC falsely stated, knowingly or recklessly, that, based on its audit, its opinion was that Telxon's financial statements were fairly presented in accordance with GAAP.  Yet, that is what Telxon must do.  *See Melder*, 27 F.3d at 1103.

Nor does the fact that there were restatements – or the magnitude of them – help Telxon here.  Generally speaking, courts have recognized that the fact that restatements occur does not provide the basis for inferring scienter.  The foundation for that reasoning lies in the accounting standards themselves.  A restatement of financial statements occurs if the conclusion is reached that there was an error in the original statements.  *See* AICPA Accountant Principles Board Opinion No. 20 (Exhibit 15) and Complaint ¶ 31.  An error can be nothing more than "unintentional misstatements or omissions of amounts or disclosures in financial statements."  AU § 312.06 Audit Risk and Materiality in Conducting an Audit (Exhibit 16 hereto).  Thus, if follows that the fact of a restatement tells you little or nothing relating to the issue of scienter.  *See Comshare*, 183 F.3d at 553 (argument that subsequent revelation of the falsehood of previous statements implies scienter lacks merit); *SmarTalk*, 124 F. Supp. 2d at 516 (no inference of scienter from fact of restatement because "it would necessarily allow a finding of scienter based on every restatement based on GAAP violations in direct contradiction of [*Comshare*]"); *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 224 (D. Mass. 1999) ("the mere fact that Peritus voluntarily restated income in late 1998 does not, standing alone, support a 'strong inference' that Peritus knowingly or recklessly misreported income"); *Reiger I*, 1999 WL 540893 at *8 (Exhibit 1 ) ("The mere magnitude of Altris' subsequent financial restatements provides no indication of how or when Price Waterhouse became aware of the misstatements in Altris' earlier disclosures."); *In re Credit Acceptance Corp.*

*Sec. Litig.*, 50 F. Supp. 2d 662 (E.D. Mich. 1999) ("restatements are common and indicate[] 'the aftermath of negligence at most'") (quoting *Goldberg v. Household Bank*, 890 F.2d 965. 967 (7th Cir. 1989)); *Glickman v. Alexander & Alexander Serv., Inc.*, [1995-1996 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,101, 1996 WL 88570, at *15 (S.D.N.Y. Feb. 29, 1996) (Exhibit 17 hereto) ("As pleaded, Alexander's restatement may reflect negligence or mismanagement but it does not raise a strong inference of fraud").

Some effort may be made to point to the magnitude of the restatement here as providing the necessary missing foundation for scienter. But two important facts must be kept in mind in that regard. First, at least as to claims against auditors, courts have generally declined to draw any inference regarding scienter based on the magnitude of restatements. *See*, *e.g*, *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 217 (S.D.N.Y. 1999). In *Livent*, the effect of the restatement was to change Livent's reported $14.2 million in 1996 earnings to a $24.9 million loss and increased Livent's 1997 loss from $62.1 million to $83.6 million. *Livent*, 78 F. Supp. 2d at 202. These restatements are of far greater magnitude than Telxon's, yet the court held "[i]t does not seem reasonable to infer recklessness on the part of an auditor solely from the magnitude of a fraud." *Id*. at 217; *see also In re SCB Computer Tech., Inc. Sec. Litig.*, No. 00-2343, slip. op. at 38 (W.D. Tenn. Feb. 15, 2001) (Exhibit 10); *SmarTalk*, 124 F. Supp. 2d at 517; *Duncan v. Pencer*, 1996 WL 19043 at *10 (Exhibit 11). To infer scienter from the magnitude of the restatements alone would require the court to "blend hindsight, speculation and conjecture to forge a tenuous chain of inferences." *Reiger II*, 117 F. Supp. 2d at 1013. The court would have to speculate that a large fraud would have conspicuous warning signs, these warning signs would have been available to the auditor, the warning signs

- 26 -

would have made the company's fraud obvious and conspicuous, and, therefore, the auditor must have known of (or been reckless in not knowing of) the fraud.  Absent specific factual allegations to support any of these inferences, this process would improperly "obscure the potentially infinite number of innocuous reasons an accountant may fail to detect a fraud of large magnitude."  *Id*; *see also SmarTalk*, 124 F. Supp. 2d at 516 ("The question is not whether the accounting errors were serious; the issue is whether those errors were known, or should have been known, to PwC at the time they were issued.").[10]

Second, the Court must keep in mind, in considering the question of magnitude, that the portion of the restatement that is even conceivably linked to PwC's statements – its audit opinions – and the portion that cannot be laid at PwC's feet, even in theory. When that distinction is taken into account here, it turns out that the effect of the restatements on the financial statements audited by PwC was relatively small:  the largest modification to total revenues was 1% and the restatements did not cause Telxon to report a loss when it had previously reported a profit.  *See* Factual Background at 10-11, *supra*.  The significant restatements were of Telxon's interim, unaudited financial statements during the 1999 fiscal year, which PwC had never reported on.  *See* Complaint

---

[10] The same is true for restatements that affect financial statements going back over a long period of time.  Attempting to infer scienter from this fact alone requires a combination of speculation and hindsight which cannot be used to replace specific factual allegations suggesting that the accountant knew of the company's fraud.  *See Comshare*, 183 F.3d at 553.

¶ 62.[11]  Thus, even if magnitude were relevant, the impact of the restatement even conceivably linked to PwC is modest.

2.      **Factual Allegations That Negate An Inference of Scienter**

To the extent the Complaint does contain specific factual allegations, they often squarely contradict Telxon's allegations of recklessness.  According to the Complaint, PwC reviewed all the key documentation relating to SofTechnics and Unimicro, and, in fact, all the other referenced transactions restated on February 23, 1999.  *See* Complaint ¶¶ 37, 42, 45, and 55-60.  PwC discussed SofTechnics and Unimicro with Telxon's senior management, as well as Telxon's Board of Directors and its Audit Committee.  *Id*. at ¶ 45.  In addition, PwC personnel "were frequently present at Telxon's corporate headquarters throughout each year and had continual access to and knowledge of Telxon's confidential internal corporate, financial, operating, and business information."  *Id*. at ¶ 29.

In contrast to the general and non-specific allegations of recklessness, these allegations portray a diligent audit team investigating complex transactions and discussing them with the audit client.  They suggest that Telxon "concede[s] that [PwC] made a sufficient investigation into [Telxon's] finances but contend that [PwC's] ultimate

---

[11] Included in this category of transactions that PwC had never reported upon prior to the restatement were two of the transactions that the Court noted as causing particular concern when it denied Telxon's motion to dismiss:  MRK and Hechingers.  *See Telxon*, 133 F. Supp. 2d at 1030-31.  Similarly, the increased reserve for VADs, which the Court also referred to in denying Telxon's motion to dismiss, *id*. at 1030-1031, implicated only the interim, unaudited financial statements, and Telxon's complaint makes no reference to this item to support its claim.  The same is the case for the buy and hold transaction to which the Court referred in its earlier opinion.  *Id*.  There is no allegation that PwC was even aware of that transaction, nor is there any other claim by Telxon concerning it with regard to PwC.

resolution of the accounting issues regarding those finances was incorrect.  That contention is not sufficient to establish scienter." *In re Worlds Of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9thCir. 1994).

Telxon also relies on PwC's alleged "coercion" regarding Telxon's second restatement as somehow supporting an inference of scienter.  *See* Complaint ¶ 93.  But if one can decipher Telxon's coercion theory, it is based on the premise that there was nothing wrong with the initial accounting for SofTechnics, Unimicro and the other transactions, the second restatement was not required under GAAP, but that PwC nonetheless "forced" Telxon to issue the restatements, and therefore trigger lawsuits and public attention, in order to somehow "cover up" PwC's own "recklessness" in connection with the earlier audits.  *See* Complaint ¶ 31 (restatement required for errors) and ¶¶ 52-53 (restatement was coerced).  But if Telxon's initial accounting was correct (and thus it had to be coerced into issuing these unnecessary restatements), then PwC did not make any misrepresentations with regard to the earlier audit opinions, let alone do so with scienter.  So the "coercion" theory seems to be inconsistent with any inference of scienter against PwC with regard to Telxon's contribution claim; it certainly does not support it.

On the other hand, if a restatement was necessary because of errors in the earlier financial statements (the only circumstances under which Telxon could be liable to the plaintiffs in the underlying action and thus could even in theory have anything to seek "contribution" to), the fact that PwC was instrumental in the restatement process strongly *negates* any inference that it deliberately concealed or ignored Telxon's prior GAAP violations.  *See Reiger II*, 117 F. Supp. 2d at 1013 (auditor's discovery of improper

transaction and insistence on restatement negated any inference of scienter); *Cheney v. Cyberguard Corp.*, [2000-2001 Transfer Binder] Fed. Sec. L. Rep. ¶ 91,258 (CCH), 2000 WL 1140306 at * 12 (S.D. Fla. July 31, 2000) (Exhibit 18 hereto) (auditor's discovery and disclosure of revenue recognition policy counters an inference of scienter); *In re Wellcare Mgmt. Group, Inc. Sec. Litig.*, 964 F. Supp 632, 642 (N.D.N.Y. 1997) (no strong inference of scienter where the auditors "conducted further investigation and *issued a restatement* after learning about [the prior error]") (emphasis added).

3.      **Other Routine Allegations Against Auditors That Do Not Sustain Telxon's Burden**

Other "facts" alleged by Telxon equally fail to give rise to any inference of scienter.  Telxon asserts that PwC failed to test or report on Telxon's internal controls, but fails to allege specifically what tests PwC failed to perform or how those tests would have revealed new information, and what and how significant that information would have been.  The only remotely specific allegation states that PwC had "the opportunity… to test Telxon's … internal controls," but the Complaint fails to provide any detail as to whether PwC took that opportunity or not.  *See* Complaint ¶ 29.  In any event, the courts have correctly recognized that a failure to detect or note a company's poor internal controls does no more than repeat a violation of GAAS and, therefore, without more, it cannot support an inference – let alone a strong inference – of scienter.  *See Decker v. Massey-Ferguson*, 681 F.2d 111, 120 (2d Cir. 1982) (failure of an accountant to identify problems with the company's internal controls and accounting practices does not create inference of scienter); *SCB Computer*, slip op. at 51 (Exhibit 10) (plaintiff cannot establish scienter by arguing that an auditor ignored client's lack of internal controls);

- 30 -

*Cheney*, 2000 WL 1140306 at \*12 (Exhibit 18) (client's lack of internal control was not a sufficient "red flag" to create inference of scienter).

Other allegations include PwC's alleged over-reliance on Telxon management, Complaint ¶82, PwC's alleged access to all relevant documents, information, and personnel, Complaint ¶93, and Telxon's "hockey stick" revenue pattern, Complaint ¶ 76. None of these provide the missing basis for a strong inference of fraud.  The courts have recognized that auditors always have access to the companies' books and records and always rely a great deal on management.[12]  If allegations based on such "facts" were sufficient to sustain a claim against outside auditors, the heightened pleading requirement that the PSLRA imposes would be effectively eliminated.  *See Reiger II*, 117 F. Supp. 2d at 1011-12 (argument that auditor "must have known" of GAAP violations because it had access to contract files was "wholly without merit" as it "invites too much speculation to satisfy either the particularity or strong inference requirements of the [PSLRA]"); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999) (if such allegations were sufficient "it might make every auditor liable in cases of securities fraud"); *Queen Uno*, 2 F. Supp. 2d at 1360 ("It is … implausible to assert that because an accountant had access to a company's internal data, it by implication was aware of any fraudulent scheme, no matter how far-reaching," such a rule would "subject any

---

[12] Management always has a significant involvement in the audit process and, in particular, will be the auditor's primary source of information during the audit.  *See* AU § 110.03 Responsibilities and Functions of the Independent Auditor (Exhibit 19 hereto) (entity's transactions and the related assets, liabilities, and equity are within direct knowledge and control of management and the auditor's knowledge of these matters is limited to that acquired during the audit); *see also Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1340-1341 (9th Cir. 1980); *Reiger II*, 117 F. Supp. 2d at 1007-1008.

- 31 -

accountant … to liability"); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are precisely the types of inferences which courts, on numerous occasions, have determined to be inadequate") (internal citation omitted).[13]

In a similar vein, Telxon itself admits in the Complaint that the "hockey stick" pattern is common to high technology companies, *see* Complaint ¶ 76, and, therefore, fails to explain how the presence of that pattern should have served as a warning to PwC that Telxon may be misstating its financial statements. If the invocation of the "hockey stick" earning patterns of most high technology companies and, indeed, many other businesses involved in sales, is sufficient to plead a cause of action for fraud under the federal securities laws, then the heightened pleading requirement of the PSLRA would become meaningless, as claims could be routinely asserted based on commonplace facts.

\* \* \*

In sum, Telxon's contribution claim is premised on nothing more than the fact that PwC audited Telxon's financial statements for the relevant time periods and Telxon has subsequently admitted to accounting errors in those financial statements. Telxon has alleged no additional specific facts that indicate that at the time PwC knew that Telxon's financial statements contained errors or that PwC had no genuine belief that its audit

---

[13] Telxon's allegation regarding the "Audit Risk Alert 1998/99" published by the AICPA, Complaint ¶ 75, does no more than restate the argument that auditors must be culpable if they fail to detect a GAAP violation despite access to company information. Accordingly, the existence of the "Audit Risk Alert" does not create a strong inference of scienter. *See SCB Computer*, slip op. at 45-46 (Exhibit10) (rejecting argument that auditors were reckless based, in part, on the Audit Risk Alert 1998/1999).

- 32 -

opinions on the financial statements were accurate.  This is pure "fraud by hindsight" and

Rule 9(b) and the PSLRA are expressly designed to screen out such claims.  *See In re*

*Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 998 (9th Cir. 1999) ( "Congress enacted

the PSLRA to put an end to the practice of pleading 'fraud by hindsight.'"); *Stevelman v.*

*Alias Research Inc.*, 174 F.3d 79, 84-85 (2d Cir. 1999) (allegations that revelations made

in one report should have been made in an earlier report do not make out a claim for

securities fraud); *SmarTalk*, 124 F. Supp. 2d at 517 (complaint against auditors based on

GAAP and GAAS violations alleged nothing more than "fraud by hindsight" as it

required speculation that had the auditor followed GAAS, it would have been aware of

the GAAP violations). [14]

---

[14] The deficiency of Telxon's allegations is demonstrated by comparing its allegations with the allegations made in cases where courts have held that plaintiffs have pleaded a strong inference of scienter by independent auditors.  In those cases, the auditor had an extensive role in the management of the audit client, or plaintiffs specifically pleaded the existence of a significant "red flag," such as an actual tip or contemporaneous admission that the financial statements were misstated.  *See SCB Computer*, slip op. at 40 (Exhibit 10); *Reiger II*, 117 F. Supp. 2d at 1012.  Telxon alleges no such involvement or "red flag."  Similarly, the Sixth Circuit recently identified in *Helwig v. Vencor, Inc.*, No. 99-5153, 2001 WL 578541 at *7-8 (6th Cir. May 31, 2001) (Exhibit 9), nine factors "usually relevant to scienter."  Although not an exhaustive list, Telxon fails to allege facts that come close to establishing even one of these factors.

**E.**     **Telxon Fails To Plead Its Own Knowing Violation, A Necessary <u>Predicate To Contribution Under the Federal Securities Laws.</u>**

Telxon only has a contribution claim against PwC if it is found by the jury to have committed a knowing violation of the securities laws. *See* Section 21D(f)(2) of the Act, 15 U.S.C. 78u-4(f)(2). Telxon fails to allege, even in the alternative, such a predicate finding. The relevant paragraph simply states that "if Telxon is adjudged liable to plaintiffs for issuing false statements… Telxon and PwC are joint tortfeasors and jointly liable to Plaintiffs." *See* Complaint ¶ 96. As explained above, *supra* pp. __-__, that statement is simply incorrect. Telxon can be "adjudged liable" to the plaintiffs without being assessed any responsibility for any fault properly ascribed to PwC. Indeed, Telxon can only be held liable for any damages properly ascribed to PwC, and thus properly the subject of a contribution claim, if Telxon is first found to have engaged in "knowing" misconduct. *See* 15 U.S.C. 78u-4(f)(2). Thus, Telxon's failure to limit its claim for contribution to those circumstances is another fatal flaw to its claim for contribution against PwC.

## II.  **TELXON'S STATE LAW CLAIMS ARE BARRED BY THE OHIO <u>STATUTE OF LIMITATIONS APPLICABLE TO SECURITIES FRAUD.</u>**

In addition to its contribution claim, Telxon brings eight state law claims, including claims for breach of contract, negligence, fraud, and breach of fiduciary duty. These claims are all subject to a two year statute of limitations, which ran out for Telxon

before it filed its complaint here.  For this reason alone, the Court must dismiss the state law claims.[15]

As is apparent from the Complaint itself, and as Telxon has argued to this Court, the basis for all of its state law claims against PwC is the same as its contribution claim and the securities fraud claims made against Telxon by plaintiffs: The damages Telxon has and will suffer as a result of injuries alleged and/or incurred by persons trading in Telxon securities in reliance on the publication and subsequent restatement of Telxon's financial statements.  *See* Telxon Corporation's Reply Memorandum in Further Support of Its Motion for Leave to File and Serve Instanter a Summons and Third-Party Complaint Against Third-Party Defendant PricewaterhouseCoopers LLP, filed March 27, 2001, at 10-11 (misrepresentations made to Telxon investors are the "operative facts" of Telxon's state law claims against PwC and plaintiffs' claims against Telxon arise from the same facts).  Indeed, all of plaintiffs' allegations against Telxon and all of Telxon's contribution claim allegations against PwC are incorporated into each of Telxon's state law claims against PwC.  *See* Complaint ¶¶ 97, 99, 101, 104, 106, 108, 110, and 115.

Telxon's state law claims are brought pursuant to the Court's supplemental jurisdiction and, as such, they are governed by Ohio's statute of limitations.  *See*

---

[15] In any event, once the Court decides that the one federal law claim should be dismissed, it should also dismiss all of the state law claims. Where a federal court dismisses the foundational federal claim before trial, it should not retain jurisdiction over any state law claims, so as to avoid unnecessary decisions of state law.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Camelio v. American Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (district court had improperly retained jurisdiction over state law claims where the foundational federal claims were dismissed at an early stage of the litigation and the remaining state law claims raise substantial questions of state law that are best resolved in state court).

*Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-51 (1980); *Fluor Eng'rs &*

*Constructors, Inc. v. Southern Pac. Transp. Co.*, 753 F.2d 444, 448 (5th Cir. 1985).

Section 1707.43 of Ohio's Revised Code states:

> No action for the recovery of the purchase price as
> provided for in the section, and no other action for any
> recovery based upon or arising out of a sale or contract for
> sale made in violation of Chapter 1707, of the Revised
> Code, shall be brought more than two years after the
> plaintiff knew, or had reason to know of the facts by reason
> of which the actions of the person… were unlawful, or
> more than four years from the date of such sale or contract
> for sale, whichever is the shorter period.

Ohio Rev. Code § 1707.43.  Over a series of decisions, Ohio courts have established that

this section provides the limitation period for all Ohio state law claims that are predicated

on the sale of a security in violation of Chapter 1707 or are otherwise inextricably

interwoven with such a sale, whether or not the plaintiff actually asserts a cause of action

under Chapter 1707.

In *Katz v. Genninger*, Hamilton App. No. C-840219, 1985 WL 9294, at *1 (Ohio

Ct. App. Jan. 31, 1985) (Exhibit 20 hereto), a plaintiff brought a claim for fraudulently

inducing him to purchase an interest in a limited partnership.  Although plaintiff's claim

was for common law fraud, the Court held that the limitation period from Section

1707.43 applied.  The Court noted that Section 1707.40 expressly provides that Sections

1707.41, 1707.42 and 1707.43 limit and restrict common law liabilities.  *Id*. at *2.

Accordingly, "when a claim grounded in common law fraud arises out of a sale made in

violation of R.C. 1707.01 *et seq*. the statute of limitations governing the claim is that

provided in R.C. 1707.43."  *Id*.  As plaintiff had filed his complaint more than four years

after he purchased the partnership interest, his claim was barred.

*Katz* was applied in *Hater v. Gradison Div. of McDonald & Co.*, 655 N.E.2d 189 (Ohio Ct. App. 1995), even where the defendants were not all parties to the initial sale of the securities.  Investors in a limited partnership brought causes of action against the broker-dealers who recommended the investment, the general partner, and the partnership's auditors, alleging securities fraud, negligence, fraud and breach of contract. *Id*. at 192.  The fraud claim against the auditor was based on allegations that the auditor concealed the true value of the partnership by issuing audited financial statements that were incorrect.  *Id*. at 197-198.  The court held that the breach of contract claim against the general partner and the fraud claim against the general partner and auditor were barred by the statute of limitation contained in Section 1707.43.  The court reasoned that the claims against the auditor "arise essentially from, and are thus predicated upon, the sale of securities and are therefore subject to the period of limitations contained in R.C. 1707.43….  Here, despite counsel's best efforts to portray them as something else, the allegations of fraud are inextricably interwoven with the sale of the partnership units." *Id*. at 198.

In *Helman* v. *EPL Prolong, Inc.*, 743 N.E.2d 484 (Ohio Ct. App. 2000), plaintiffs brought, amongst other claims, a breach of contract claim for failing to deliver stock that plaintiffs had paid for.  The court held that even though the claim was framed as a common law contract claim, the court must look to the actual nature or subject matter of the case, rather than the form of the pleading.  *Id*. at 493.  The court then determined that the complaint in fact alleged what amounted to multiple violations of Chapter 1707 and that "[r]egardless of whether appellants would have to prove that appellees violated a specific provision of R.C. Chapter 1707, their claim is still based upon and inextricably

interwoven with a fraudulent sale of securities." *Id*. at 494.  The court also held that it was settled that specific statutory provisions should prevail over general provisions. Accordingly, the specific securities limitation period set forth in Section 1707.43 should prevail over the general contract limitation period because "[e]ven though appellants' contract claim can be characterized as a common-law breach-of-contract claim, it overlaps with the allegations of violations of R.C. Chapter 1707." *Id*.

Under the reasoning of *Katz*, *Hater*, and *Helman*, Section 1707.43 must apply to Telxon's state law claims against PwC.  All of Telxon's state law claims are inextricably interwoven with the allegedly fraudulent sale of Telxon securities, *i.e.*, a violation of Chapter 1707. [16]  As these cases hold, the fact that Telxon does not allege a violation under Chapter 1707 is not determinative.  To the contrary, Ohio law dictates that the specific statute of limitations enacted for securities claims nonetheless applies.

It is apparent that the Telxon was aware of the facts underlying its state law claims by February 23, 1999, the date of the second restatement of Telxon's financial statement.  At that point, Telxon by definition was aware of PwC's alleged "coercion" of Telxon.  *See* Complaint ¶ 53.  It was also well aware of all the other "facts" alleged in the Complaint about the PwC's performance of its work for Telxon and PwC's knowledge of Telxon's systems and operations.  *See* Complaint ¶¶ 24-30, 37-38, 42-43, 49-63, 79, 82-83, and 91.  Lest there be any doubt, a complaint alleging federal securities law

---

[16] Chapter 1707 prohibits the selling of a security "by reason of the falsity of any material statement contained [in a written document] or for the omission [from a written document] of material facts."  *See* Ohio Rev. Code Ann. § 1707.41 (West 2001).  The fraudulent sales of Telxon securities alleged by plaintiffs, which is the basis for Telxon's

Footnote continued on next page

violations, including allegations based on Telxon's second restatement announced on February 23, 1999, was filed on March 11, 1999. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 805-806 (N.D. Ohio 1999).

Telxon was not granted leave to file its Complaint until April 30, 2001, and the Complaint was not filed and served until May 1, 2001, both dates well over two years later. Accordingly, all of Telxon's state law claims are barred by Section 1707.43.[17]

## III. THE COURT ALSO MUST DISMISS MOST OF TELXON'S STATE LAW CLAIMS BECAUSE THEY ARE NOT ADEQUATELY PLED.

The core of Telxon's claims for fraud, fraudulent misrepresentation, fraudulent concealment, constructive fraud and breach of fiduciary duty appears to be Telxon's theory that PwC "coerced" Telxon into restating its financial statements for fiscal years 1996 through 1998 and its unaudited financial statements for its first and second quarters of fiscal year 1999. *See* Complaint ¶ 100, 103, 105, 107, 118. Telxon's Complaint attempts awkwardly to force this strange and novel theory into the mold of conventional state law claims. The result is a vague, inconsistent, and at times simply incoherent Complaint that fails to satisfy even the rudimentary requirements of notice pleading. For

---

Footnote continued from previous page
claims against PwC, therefore, would be sales made in violation of Chapter 1707.

[17] In any event, the allegations based on damages arising from securities transactions that occurred more than four years prior to the date that the limitations period is deemed to have stopped running are out of time, since Section 1707.43 also provides a statute of repose for claims brought more than four years after the date of the sale or contract for sale of the securities. The underlying class action here is brought on behalf of plaintiffs who purchased securities as far back as May 21, 1996, so clearly a portion of Telxon's state law claims are untimely. *See Katz*, 1985 WL 9294 at *2 (Exhibit 20) (suit barred because filed four years after purchase of security).

this additional reason, as discussed below, the Court should dismiss Counts III, IV, V, VI and IX of the Complaint.

> **A.** **Telxon Has Failed to Plead Any Deception in Its Fraud and Fraudulent Misrepresentation Claims, Let Alone Plead Them with Sufficient Particularity.**

Telxon's allegations of affirmative fraud and fraudulent misrepresentation (Counts III and VI)[18] must be dismissed for two reasons.  First, Telxon's vague and conclusory allegations that PwC affirmatively misrepresented that GAAP required restatement of Telxon's financial statements fail to satisfy the requirement of pleading with particularity imposed by Fed. R. Civ. P. 9(b).  Second, Telxon's claims must be dismissed because Telxon never alleges that it was deceived by any misrepresentation by PwC into believing that restatement was required by GAAP.  Instead, Telxon presents the contradictory theory that it was somehow "coerced" into issuing the restatements.

Telxon's allegations of fraud plainly fail to achieve the requisite degree of particularity required by Rule 9(b).  "To satisfy FRCP 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).  Here, Telxon has neglected properly to plead any of the elements required by *Bender*.  Telxon never alleges the dates on which the allegedly fraudulent statements were made.  *See In re*

---

[18] Telxon alleges in Count III not only that PwC committed affirmative fraud, but that it improperly "concealed from Telxon that it was insisting on the restatement in order to obviate the appearance of fraud by PwC." Complaint ¶ 100.  This allegation is properly one of fraudulent concealment and, if treated as such, should be dismissed for the reasons stated in Section III.B, *infra*.

*United Shoe Corp. Litig*, 718 F. Supp. 643, 646 (S.D. Ohio 1989) (dismissing complaint failing to allege "the dates on which [the] alleged acts or omissions occurred"). Likewise, it never alleges the place where the statements were made.  And Telxon never alleges the specific content of the allegedly fraudulent statements – for example by citing or attaching a specific document – but instead merely repeats over and over again its mantra that PwC falsely represented to it that its restatements were required by GAAP. Telxon never even names in its Complaint the particular individuals at PwC purportedly responsible for the alleged misrepresentations or the individuals at Telxon to whom such statements were made.  *See Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998) (dismissing fraud claims where "the complaint fails to identify the specific actors or 'speakers' responsible for making the alleged false or misleading statements"); *In re United Shoe*, 718 F. Supp. at 646 (dismissing complaint which did not allege who at the defendant corporation committed the fraud).  Devoid of even the most basic factual details concerning the alleged fraud, Telxon's claims fail to provide PwC with the requisite notice mandated by Rule 9(b) and should therefore be dismissed.

Not only are Telxon's allegations far too general to survive a motion to dismiss, Telxon's "coercion" theory utterly belies its claim that it was defrauded by PwC into believing that GAAP required restatement.  Under Ohio law, there can be no fraud unless the plaintiff was unaware that the statement made by the defendant was false.  *See Moore v. Fenex, Inc.* 809 F.2d 297 (6th Cir. 1987) ("The [plaintiff] must be ignorant of the fact averred . . . .") (citing *Dunn Appraisal v. Honeywell Info. Sys.*, 687 F.2d 877 (6th Cir. 1982)).  This is a sensible requirement, since there can be no justifiable reliance on a fraudulent statement unless the plaintiff was actually deceived by it.  *See id*.  But Telxon

- 41 -

never claims, in even the most perfunctory fashion, that it was ignorant of the alleged falsity of PwC's representation that GAAP required the restatements at issue. To the contrary, Telxon's theory that PwC coerced Telxon into issuing those restatements implies that Telxon believed at the time of the restatements that they were not in fact required by GAAP, but that it was somehow forced by PwC to restate them anyway. Whether or not such alleged "coercion" is actionable under some conceivable theory of liability, it is entirely inconsistent with a claim of fraud.

Telxon's allegations of fraud and fraudulent misrepresentation are therefore not merely fatally vague, but are simply incoherent. Such confusing and contradictory claims fail to provide PwC with the sort of meaningful or understandable notice that would permit PwC adequately to develop its defense. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 322 (6th Cir. 1999) ("The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud.") (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988)). Telxon's affirmative fraud claims should accordingly be dismissed.

**B.**      **Telxon's Fraudulent Concealment Claim Fails Because Telxon Pleads Only The Concealment Of An Alleged Motive For PwC's Conduct, Not Any Material Fact, and Because No Duty Of Disclosure Was Or Can Be Properly Pled.**

This Court should also dismiss Telxon's Fraudulent Concealment claim (Count V).[19]  Telxon never alleges that PwC concealed from it any material fact, a basic element of a fraudulent concealment claim.  Instead, it merely alleges that PwC improperly concealed its motive for committing the purported misrepresentation that restatement was required by GAAP.  In any event, because PwC never owed Telxon a duty of disclosure in the first instance, there can be no fraudulent concealment as a matter of law under the circumstances alleged.

There can be no fraudulent concealment here because Telxon does not allege that a material fact was concealed – only that PwC's supposed motive was concealed.  A basic element of fraud by omission is concealment of a material fact.  *See Interim Healthcare of Northeast Ohio, Inc. v. Interim Servs., Inc.*, 12 F. Supp. 2d 703, 711 (N.D. Ohio 1998) (stating that an element of fraudulent concealment is "a concealment of a fact . . . which is material to the transaction at hand); *Firestone v. Galbreath*, 747 F. Supp. 1556, 1569 (S.D. Ohio 1990) ("The elements of actual fraud require a showing of actual or implied representations or concealment of a material fact."), *aff'd in part by* 976 F.2d 279 (6th Cir. 1992).  Here, Telxon alleges that "PwC concealed from Telxon that it was insisting on the restatement in order to obviate the appearance of fraud by PwC and to

---

[19]    Telxon also appears to allege in Count V a claim of affirmative misstatement, claiming that "PwC falsely represented that GAAP required Telxon to restate its audited financial statements . . . ."  Complaint ¶ 105.  This allegation of misstatement is one of fraud, not fraudulent concealment, and if treated as such should be dismissed for the reasons stated in Section III.A, *infra*.

limit PwC's exposure to liability . . . ."  Complaint ¶ 105.  Essentially, Telxon thus alleges that PwC committed a distinct fraudulent act by concealing from Telxon its supposed motive for committing affirmative fraud in the first instance.  If this theory were permitted to stand, then every claim of affirmative misrepresentation would also constitute fraudulent concealment, since there will always be an alleged unrevealed motive for fraud.  It cannot be the case that every affirmative fraud claim carries with it a sister claim for fraudulent concealment.  Yet that is the result of Telxon's logic.

Telxon's fraudulent concealment claim also fails for lack of a proper allegation that PwC owed Telxon a duty of disclosure.  "[T]he duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."  *Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842 (Ohio Ct. App. 2000).  Telxon never alleges in Count V that PwC owed Telxon such a duty.  While Telxon does allege the existence of such a duty in earlier portions of the Complaint, an auditor does not owe its client such a fiduciary duty, at least absent particular allegations of unusual factual circumstances.  *See* discussion Section III.A, *infra*.  Absent such allegations, which were not and could not be made here, Telxon's conclusory allegations do not overcome this basic legal doctrine.

C.      **Telxon Has Failed Adequately to Plead Its Breach of Fiduciary Duty and Constructive Fraud Claims Because It Has Not And Cannot Plead The Duty Necessary To Both Claims.**

Telxon's breach of fiduciary duty and constructive fraud claims (Counts IV and IX) are also inadequate as a matter of law because they lack a proper allegation of a

fiduciary or similar duty. [20]  As a general matter, an independent auditor does not owe a fiduciary duty to its client as a matter of law.  And even if such a duty can exist in some unusual factual circumstances, Telxon's conclusory allegations fail to establish the existence of such a relationship.

The role of an auditor under ordinary circumstances is irreconcilable, as a matter of law, with the concept of fiduciary duty.  "The duty of a traditional fiduciary is to act 'in a representative capacity for another in dealing with the property of the other,' whereas an auditor acts 'independently, objectively and impartially, and with the skills which it represented to its clients that it possessed.'"  *Resolution Trust Corp. v. KPMG Peat Marwick*, 844 F. Supp. 431, 436 (N.D. Ill. 1994) (quoting *Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1065 (9th Cir. 1971)).  Even the Supreme Court of the United States has recognized the theory underlying this concept:  "[T]he independent auditor assumes a *public* responsibility transcending any employment relationship with the client . . . .  This 'public watchdog' function demands . . . total independence from the client at all times and requires complete fidelity to the public trust."  *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984) (emphasis in original).  An auditor's independent duty to the public as a whole is thus simply irreconcilable with the role of a fiduciary, which requires one to act for the particular benefit of and on the behalf of another.  *See Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 662 N.E.2d 1074, 1082 (Ohio

---

[20] A necessary element of a constructive fraud claim is the existence of a fiduciary or similar relationship, so the same analysis applies to both that claim and Telxon's breach of fiduciary duty claim.  *See Firestone*, 747 F. Supp. at 1569 ("Constructive fraud often arises due to a special confidential or fiduciary relationship between the parties which

Footnote continued on next page

1996) (rejecting a claim of fiduciary duty where "neither party had, nor could have had, a reasonable expectation that [the purported fiduciary] would act solely or primarily on behalf of the [other party].") (quoting *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979)).[21]

Even if there were some circumstances under which an auditor could have a fiduciary or similar relationship with its client, Telxon fails to allege any such circumstances.  Rather, Telxon alleges in a bare, conclusory fashion that Telxon "reposed special confidence and trust in PwC" and therefore PwC owed it a fiduciary duty.  Telxon Complaint ¶¶ 102, 116-117.  Absent any factual allegations whatsoever to establish the existence of such a relationship, however, Telxon's conclusory statements cannot survive a motion to dismiss.  *See Advocacy Organization*, 176 F.3d at 325 (legal conclusions wholly unsupported by allegations of fact should not be accepted as true for purposes of a motion to dismiss); *Bolden v. John Hancock Mutual Life Ins. Co.*, 422 F. Supp. 28, 31 (E.D. Mich. 1976) (dismissing fiduciary duty claim where "allegations may be true . . . [but] are not supported by any facts" since "mere conclusions on the pleader are not to be accorded . . . deference.") (citing *L'Orange v. Medical Protective Co.*, 394 F.2d 57 (6th

---

Footnote continued from previous page
affords the power and means to one party to take undue advantage of or exercise undue influence over another.").

[21] *See also FDIC v. Schoenberger*, 781 F. Supp. 1155, 1157-58 (E.D. La. 1992) ("[A]ccountants do not owe a fiduciary duty to their clients when providing services as auditor; rather the nature of an independent auditor is that it will perform the services objectively and impartially."); *Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 552 (S.D.N.Y. 1990) ("Courts do not generally regard the accountant-client relationship as a fiduciary one.") (quoting *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1356 (S.D.N.Y. 1982)).

Cir. 1968)); *see also Resolution Trust*, 844 F. Supp. at 436 ("Perhaps in some instances the function of an independent auditor could overlap into areas in which it would have a fiduciary duty to its client.  But in general that is not the case, and nothing in plaintiff's allegations raises any special instance here.").  Because Telxon thus fails to allege any facts to support the existence of a fiduciary duty, its fiduciary duty and constructive fraud claims against PwC should be dismissed.[22]

---

[22] Even if the Court does not use its dismissal of Telxon's federal claim as a basis for simply sending Telxon to the state courts to pursue its state law claims, it certainly should dismiss Telxon's couple of remaining state law claims for breach of contract and for negligence if it otherwise decides to dismiss Telxon's federal law claim *and* the various state law claims set forth in Counts III, IV, V, VI and IX.  *See supra* p. 35 n. 15 (discussion of *Gibbs* doctrine).

CONCLUSION

For the reasons set forth in this Memorandum, this Court should dismiss Telxon's

Complaint against PwC.

Respectfully submitted

s/Pete C. Elliott
Pete C. Elliott (0002235)
Robert C. Psaropoulos (0067296)
Benesch, Friedlander, Coplan
& Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 363-4500 – telephone
(216) 363-4588 – facsimile
pelliott@bfca.com
rpsaropoulos@bfca.com

Of Counsel:

Steven M. Witzel                          Geoffrey F. Aronow
Office of General Counsel                 Nicholas I. Porritt
PricewaterhouseCoopers LLP                Arnold & Porter
1301 Avenue of the Americas               555 Twelfth Street, N.W.
New York, NY 10019                        Washington, D.C. 20004-1206
(212) 707-6792 – telephone                (202) 942-5000 – telephone
(646) 394-6717 – facsimile                (202) 942-5999 – facsimile

                                          Counsel for PricewaterhouseCoopers LLP

Dated: June 11, 2001

- 48 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2001, a copy of the foregoing Memorandum In Support Of Third Party PricewaterhouseCoopers LLP's Motion to Dismiss was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/Pete C. Elliott
Pete C. Elliot (0002235)
Robert C. Psaropoulos (0067296)
Benesch, Friedlander, Coplan
& Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 363-4500 – telephone
(216) 363-4588 – facsimile
pelliott@bfca.com
rpsaropoulos@bfca.com

Jun 11 2001 10:51 mls CLE 23651/3/951185  Ver 1